UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORING BAILEY,<br><br>    Plaintiff,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY,<br>CBS CORPORATION f/k/a VIACOM INC.,<br>successor by merger with CBS<br>CORPORATION f/k/a WESTINGHOUSE<br>ELECTRIC CORPORATION;<br>AIR & LIQUID SYSTEMS CORPORATION,<br>        AS SUCCESSOR BY MERGER TO<br>            BUFFALO PUMPS, INC.,<br>LESLIE CONTROLS, INC.<br><br>    Defendants. | Civil Action<br>No.: **3:10-cv-01055-VLB** |

NOTICE OF JOINDER IN REMOVAL
OF ACTION FILED BY CBS CORPORATION
PURSUANT TO 28 U.S.C. § 1442 BY DEFENDANT AIR & LIQUID SYSTEMS
CORPORATION, AS SUCCESSOR BY MERGER TO BUFFALO PUMPS, INC.

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant, Air & Liquid Systems Corporation, as successor by merger to Buffalo Pumps, Inc. ("Buffalo Pumps")[1] in the above-captioned action, hereby joins in the Notice of Removal filed on July 6, 2010 by CBS Corporation and files its files its Notice of Removal of the state court action filed by Plaintiff Loring Bailey (hereinafter "Plaintiff"), described below to this Court pursuant to 28 U.S.C. § 1442:

---

[1] Buffalo Pumps, Inc. merged into Air & Liquid Systems Corporation on December 31, 2009.  The prior operations of Buffalo Pumps, Inc. now are conducted by the Buffalo Pumps Division of Air & Liquid Systems Corporation.

- 1 -

I. **BACKGROUND**

1. Plaintiff filed his Complaint, Civil Action No. CV-10-6010381-S, in the Connecticut Superior Court of Fairfield County on May 20, 2010. Buffalo Pumps received service of the Complaint on June 14, 2010. Plaintiff's Complaint alleged exposure while "employed at General Dynamics/Electric Corp., Groton, CT from on or about 1940 to 1979 in various positions including estimator, contract and change analyst, tradesman, and project engineer." *See* copy of Complaint, annexed hereto as **Exhibit 1**, at Paragraph 1.

II. **FEDERAL OFFICER REMOVAL IS APPROPRIATE UNDER 28 U.S.C. § 1442 (a)**

2. Buffalo Pumps is entitled to remove this action because (1) it has a colorable federal defense to the Plaintiff's claims; (2) there is a causal nexus between Plaintiff's claims and Buffalo Pumps' actions taken at the direction of the Navy; and (3) it is a person who acted under the direction of the Navy within the meaning of 28 U.S.C. § 1442(a)(1). *See Mesa v. California*, 489 U.S. 121 (1989); *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), *citing U.S. v. Varig Airlines*, 467 U.S. 797, 814 (1984).

3. Plaintiff's Complaint, received by Buffalo Pumps on June 14, 2010, indicates that this case is removable. This Notice of Removal is timely because it is being filed within 30 days after Buffalo Pumps received service of the first "paper" within the meaning of U.S.C. §1446(b) from which Buffalo Pumps could determine that the case is removable, namely Plaintiff's Complaint, received by Buffalo Pumps on June 14, 2010, which, for the first time in this proceeding, alleged exposure to asbestos in connection with a Buffalo Pumps product while employed at General Dynamics/Electric Boat. *See* **Exhibit 1**.

4. Buffalo Pumps manufactured and supplied pumps for Navy ships pursuant to vessel-specific contracts between it and the United States Navy. Each of these pumps was designed and manufactured in accordance with detailed specifications and/or regulations promulgated or adopted by the U.S. Navy and its officers, and each relevant aspect of the pumps' design and manufacture was subject to detailed and on-going direction and control by the Navy through its individual officers.

5. Buffalo Pumps is a "person" within the meaning of 28 U.S.C. § 1442(a). *See Green v. A.W. Chesterton Co.*, 366 F. Supp. 2d 149, 153 n.3 (D. Me. 2005); *see also Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998) (corporate entities qualify as "persons" under § 1442(a)(1); *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992).

6. Buffalo Pumps has a colorable federal defense to Plaintiff's claims, namely, the military contractor defense.  To make a colorable showing of this defense Buffalo Pumps must simply show that the defense is "plausible" and not "completely frivolous."  *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996).

7. In a case premised on a failure to warn of dangers allegedly associated with products supplied to the government, a defendant is entitled to the protections of the military contractor defense where any alleged state law duty to warn conflicts with the government's interest in procuring military equipment.  Whether a conflict exists is determined by a three-part test set forth by the Sixth Circuit in *Tate v. Boeing Helicopters*, 55 F.3d 1150 (6th Cir. 1995).  A conflict between federal policy and state law exists where:  (1) the United States exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved

warnings; and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not.  *Id.* at 1157.  "[T]he deliberate trade-off between military mission requirements and safety concerns is at the heart of the [military] contractor defense."  *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 999 (7th Cir. 1996).

8. It is difficult to imagine any area in which the Navy had either a greater discretionary interest or more detailed knowledge and expertise than that of asbestos during World War II and the decades that followed.  During that time, the Navy embarked on a program of shipbuilding unparalleled in history before or since.  The Navy and its contractor shipyards constructed thousands of vessels of unprecedented size and complexity.  The vessels were designed and constructed under to strict Navy direction and control, exercised by the most diverse and advanced engineering workforce in the nation.   Even the smallest of these vessels required thousands of component parts, supplied by hundreds of different manufacturers.  No level of detail was too small to be encompassed by Navy specifications and requirements.  A key element of the Navy's shipbuilding program was the use of virtually unimaginable quantities of asbestos.

9. The Navy exercised its discretion in all aspects of its procurement of asbestos-containing products in its ships including with respect to written materials that accompanied those products.  *Shuman v. United States*, 765 F.2d 283, 290 (1st Cir. 1985).  The Navy's discretion encompassed not only technical matters related to the construction of ships and the components used in construction, but also to all aspect of health and safety associated with the construction and operation of its vessels.  The

Navy was and is one of the world's experts in the use of asbestos and in its dangers, and knew far more in this regard than Buffalo Pumps. Consequently, Buffalo Pumps could not have had any information regarding health risks of asbestos that the Navy did not already have.  Given the significance of asbestos as a strategic material and the Navy's awareness of its health effects, the Navy's discretion extended to all matters relating to its use.  See *O'Connell v. Foster Wheeler Energy Corp*, 544 F. Supp. 2d 51 (D. Mass. 2008); *Contois v. Able Indus. Inc.*, 523 F. Supp. 2d 155 (D. Conn. 2007); *Dematties v. ACMAT Corp.,* 2008 U.S. Dist. LEXIS 86717 (D. Conn. Oct. 27, 2008); *Machnik v. Buffalo Pumps, Inc.*, 506 F. Supp. 2d 99 (D. Conn. 2007); Forman, S., "US Navy Shipyard Occupational Medicine through World War II", Journal of Occupational Medicine, 31(1); 28-32; 1988 (attached hereto as **Exhibit 2**).

      10.    In accordance with its policies and practices pertaining to the construction of its ship, and in the further exercise of its discretion, the Navy required Buffalo Pumps to conform to detailed, uniform specifications regarding every aspect of the product it supplied, from the type and amount of asbestos to be used in the pump's gasket, to the exact wording of any written communications.  The Navy would not have permitted Buffalo Pumps to alter those specifications to include asbestos warnings.  Therefore, under *Boyle v. United States*, *supra*, and *Tate v. Boeing Helicopters*, *supra*, Buffalo Pumps has a colorable federal defense to plaintiffs' claims.

      11.    There is a clear causal nexus between Buffalo Pumps' actions undertaken at the government's direction and the harm that plaintiff alleges, namely, asbestos-related disease.  Simply put, every action that Buffalo Pumps undertook was at the direction of the Navy.  Manufacturers were directed to follow the Navy's specifications,

period.  Therefore, the second requirement under *Mesa, supra*, of a nexus and *Mesa's* third requirement, that Buffalo Pumps was "acting under" the Navy, are both clearly shown.

12. The United States District Court for the District of Connecticut has repeatedly held that Buffalo Pumps, based on the foregoing, had sufficiently made the necessary colorable showing of a federal military contractor defense and thus federal officer jurisdiction to justify  federal jurisdiction. *See, e.g.*, *Pianko v. General Electric Co.*, 2010 WL 717897 (D. Conn. Feb. 23, 2010), *Allen v. CBS Corp.*, 2009 WL 4730747 (D. Conn, Dec. 1, 2009), *Wight v. General Electric Co.*, 2009 WL 2766706 (D. Conn. August 27, 2008) (Hall, J.);  *Allen v. General Electric Co.*, 2009 WL 2766583 (D. Conn, Aug. 27, 2009) (Hall, J.); *Kotecki v. Buffalo Pumps*, 2009 WL 2253169 (D. Conn. July 28, 2009) (Eginton, J.); *Murphy v. General Electric Co.*, 2009 WL 2151192 (D. Conn. July 15, 2009) (Eginton, J.); *DeMarco v. General Electric Co.*, Case No. 3:09-cv-00373 (D. Conn. May 29, 2009) (Dorsey, J.); *Carroll v. Buffalo Pumps*, 2008 WL 4793725 (D. Conn. October 27, 2008) (Eginton, J.); *DeMatties v. Acmat Corp.*, 2008 WL 4735145 (D. Conn. October 27, 2008) (Eginton, J.); *Olivar v. Buffalo Pumps*, 2008 U.S. Dist. LEXIS 84174 (D. Conn. October 21, 2008) (Droney, J.); *Viscosi v. American Optical Corp.*, 2008 WL 4426884 (D. Conn. Sept.. 29, 2008) (Underhill, J.); *Despres v. AMPCO-Pittsburgh Corp.*, 577 F.Supp.2d  604 (D. Conn. 2008) (Arterton, J.); *Pantalone v. Aurora Pump Co.*, 576 F.Supp.2d 325 (D. Conn. 2008) (Arterton, J.); *Contois v. Able Industries*, 523 F.Supp.2d 155 (D. Conn 2007) (Thompson, J.).

### III.     PROCEDURAL COMPLIANCE

13.     Because Buffalo Pumps satisfies the requirements for removal under 28 U.S.C. § 1442(a), it is entitled to remove this entire action.  Buffalo Pumps is not required to notify or obtain the consent or approval of any other defendant in this action in order to remove Plaintiff's action as a whole pursuant to 28 U.S.C. § 1442(a)(1).  *See Ely Valley Mines, Inc. v. Hartford Accident Indemnity Co.,* 644 F.2d 1310, 1315 (9th Cir. 1981).

14.     Buffalo Pumps hereby requests a full and fair opportunity to brief, respond, and argue against any Motion for Remand filed by Plaintiff.

**WHEREFORE**, Air & Liquid Systems Corporation, as successor by merger to Buffalo Pumps, Inc., hereby joins in the removal of this action to this Court filed by the defendant, CBS Corporation.

Respectfully submitted,

The Defendant,
AIR & LIQUID SYSTEMS CORPORATION,
AS SUCCESSOR BY MERGER TO BUFFALO
PUMPS, INC.
By its attorneys,

*/s/ Michael D. Simons*_____
Michael D. Simons, Esq, Fed. Bar # ct28100
Bryna Rosen Misiura, Esq, Fed # ct27675
Governo Law Firm LLC
Two International Place
Boston, MA  02110
Phone:  (617) 737-9045
Fax: (716) 737-9046
msimons@governo.com
bmisiura@governo.com

-and-

_____
Geoffrey L. Squitiero, Fed. Bar No.: ct03105
Maher and Murtha, LLC
528 Clinton Avenue
P.O. Box 901
Bridgeport, CT  06601
Phone (203) 367-2700
Fax (203) 335-0589
gsquitiero@maherandmurtha.com

DATED: July 12, 2010